# DERMOTT TRACTOR Co. *v.* Preston SIMMONS
## ET AL

5-5855 478 S.W. 2d 747

## Opinion delivered April 10, 1972

*John F. Gibson,* for appellant.

*G. B. ("Bing") Colvin, III,* for appellees.

Lyle Brown, Justice. Appellant Dermott Tractor Company was awarded a personal judgment against one of the nine appellees, Preston Simmons; however, the chancellor denied appellant's prayer for foreclosure against Preston Simmon's alleged undivided interest in heir property. Preston's eight brothers and sisters were made parties because it was alleged that they also had an interest in the land. Appellant here contends that the finding of the chancellor that Preston owned no interest in the land was against the preponderance of the evidence.

In December 1967 Julia Mae Simmons died testate, survived by nine children. She willed a ten-acre tract of land to three of the nine children and bequeathed to Preston and the others one dollar each. In April 1968,

Preston executed a note and mortgage to Dermott Tractor Company and referred to "The undivided interest of Preston Simmons, an heir at law of Julia Simmons, deceased," and then described the ten-acre tract.

In October 1970 Dermott filed its suit in foreclosure. It alleged that the will had been nullified by an agreement of all the Simmons heirs to divide the land as if there had been no will. A few months thereafter the will was filed for probate.

In support of its contention of renunciation of the will, Dermott offered four facts from which an inference could be drawn that there was a renunciation:

(1) The mortgage—Preston Simmons to Dermott— was dated four months after the death of the mother and purported to mortgage an undivided interest in the land at issue;

(2) The mortgage was executed at a time when apparent record title to the land was in the heirs (this is because the will had not been filed for probate);

(3) A house burned on a lot that was willed to a grandchild. All the heirs signed a release at the request of the insurance company; and,

(4) One of the heirs, Julia Mae Simmons Webb, signed an affidavit for the collection of a small estate (the fire insurance) and in that instrument it stated that there was no will. That was also done at the request of the insurance company.

Three of the Simmons heirs testified categorically that there was no agreement renouncing the will. One of them explained that they did not go to a lawyer and did not know the will had to be processed through court proceedings. In other words it was thought that the will carried the strength of a deed and automatically transferred the property.

Preston Simmons gave this explanation of the signing of the mortgage. In 1966 Dermott obtained a judgment

against him. As a result of that judgment being on record the Farmers Home Administration would not finance Preston in making his crop. The refusal occurred in 1968. He was told by Dermott that if he would sign a new note secured by his interest in his mother's land then it would satisfy the judgment. He executed those instruments and the 1966 judgment was satisfied. Consequently he secured a crop loan from FHA. Preston Simmons said he was renting the land from Julia Mae Simmons Webb; that his three-fourths of the crop is paid to FHA and the other fourth goes to Mrs. Webb, representative of the estate, to pay the rent on the land.

Lee Hester Denzy, the youngest of the Simmons children, testified. She had some contact with the insurance agent when the house burned. She said the agent inquired about a will and she obtained the will from her sister and produced it. The agent, she testified, made a copy of it. Notwithstanding the production of the will (and apparently because it had not been offered for probate) the insurance agent prepared a release for all the heirs to sign. The witness said she knew nothing about an affidavit for collection of a small estate. She insisted that there was never any agreement about renouncing the will, and that they considered the property to belong to those mentioned in the will. She said the insurance proceeds were put in the bank in the name of Julia Mae Simmons Webb because she was the executrix named in the will. She said she had received a part of the rent money, it being divided between the three named beneficiaries.

Bert Simmons, Jr., testified that he claimed no interest in the property and that all the heirs considered as owners those children who were named as beneficiaries in the will. He said he was not given any part of the insurance proceeds, nor has he ever received any part of the rent money; in fact he insisted that those proceeds belonged to the named beneficiaries.

It appears that the affidavit for collection of small estate was prepared in the insurance office. It is notarized by the insurance agent. (That is the instrument which contains a printed recitation that "The decedent left no

will.") It is confusing as to why the affidavit was executed because the insurance agent said he saw the will and made a copy of it. The only logical conclusion is that neither the insurance agent nor the one heir who signed the affidavit noticed the recited statement. Appellant would have us apply estoppel to the heir who signed the affidavit. Suffice it to say we find no merit in that contention.

The chancellor determined that the positive testimony of the three heirs who testified that there had been no renunciation of the will was stronger than the circumstances proved in evidence by appellant. The credibility of the three heirs, their stations in life, their education or lack thereof, and their financial ability or inability to probate the will, were crucial matters which the chancellor could evaluate so much better than this court. We are unable to say that the chancellor's findings were clearly against the preponderance of the evidence.

Affirmed.